Laurence F. BECKER and Marilyn Becker, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant.

No. C–86–6463 SAW.

United States District Court, N.D. California.

July 16, 1987.

Jeffrey A. Little, Larry D. Langley, Law Office of Langley & Haigh, Palo Alto, Cal., for plaintiffs.

Craig A. Starr, Renee Welze Livingston, Bledsoe, Cathcart, Eliot, Curfman & Allswang, San Francisco, Cal., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

WEIGEL, District Judge.

Plaintiffs, Laurence F. and Marilyn Becker, claim a loss of $104,750.00 under two homeowners insurance policies which were issued by defendant State Farm Fire and Casualty Company ("State Farm"). The loss arises out of a contract the Beckers made in 1980 with TDC, a corporation. The contract was signed by Joel Lupert, as president of TDC. TDC agreed to develop, equip, and manage a movie theater on behalf of the Beckers, who agreed to pay approximately $230,000.00 as consideration. Pursuant to the agreement, the Beckers gave Lupert two checks as installment payments. The first check was written on August 15, 1980 for $63,000.00. The second check was written on June 22, 1981 for $47,000.00. Lupert negotiated each check shortly after receiving it. In 1982, Lupert sold TDC to a TDC employee and withdrew a large amount of money from TDC's bank account. TDC never developed the theater and eventually filed for bankruptcy. In July, 1982, the Beckers filed suit against Lupert, TDC, and others in state court. The Beckers obtained a judgment against Lupert in October, 1985; however, they have not recovered their investment.

State Farm issued a homeowners policy that was in effect when plaintiffs issued the $63,000.00 check to Lupert. A renewed policy was in effect when plaintiffs issued the $47,000.00 check.

The Beckers first notified their insurance agent of their claim in May, 1985. Plaintiffs' attorney initially urged State Farm to pay $1000.00 pursuant to a special limitation in the insurance policy. State Farm sent plaintiffs a draft for that amount. Plaintiffs then raised their demand to $104,000.00. State Farm denied this demand. The Beckers seek a declaration that State Farm must pay $104,000.00.

The parties have filed cross motions for summary judgment. The Beckers argue that the special limitations in the policies are ambiguous and, therefore, do not apply to their loss. State Farm argues that plaintiffs' suit is time-barred and that several limitations in the policies apply to plaintiffs' claim.

## ANALYSIS

### A. Twelve-Month Limit for Filing Suit

The first insurance policy provided that any suit on the policy must be commenced within twelve months of "inception of the loss." The second policy provided that any action must be commenced within one year of the "occurrence causing loss or damage." The "inception of the loss" of the $63,000.00 check and the "occurrence causing loss" of the $47,000.00 check certainly happened no later than the day plaintiffs filed suit against Lupert and TDC for fraud. Yet plaintiffs did not notify State Farm of their claim until almost three years after that date and they did not sue State Farm until more than four years after that date.

■ The Beckers argue that State Farm has waived its right to assert the twelve-month limitations clause because it did not raise this defense when it denied plaintiffs' claim. An insurer waives any defense that a reasonable investigation would have uncovered. *McLaughlin v. Connecticut General Life Ins. Co.*, 565 F.Supp. 434, 451 (N.D.Cal.1983) (Patel, J.); *Egan v. Mutual of Omaha*, 24 Cal.3d 809, 819, 620 P.2d

141, 169 Cal.Rptr. 691 (1979) (in bank), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). The rationale is that a waiver rule gives the insurer incentive to investigate claims before denying them. The defenses subject to the waiver rule go to whether the claimed loss is covered by the policy. Here, the twelve-month limit for bringing suit is unrelated to any investigation of whether the claimed loss is covered by the policies. Also, the time limit had expired long before plaintiffs ever contacted State Farm about their loss. State Farm did not waive the time limit provision by failing to warn plaintiffs before they filed suit that their right to sue had expired.

■ The Beckers also argue that State Farm had a duty to inform them of the twelve-month time limit. This argument has no merit because the Beckers did not contact State Farm until after the time limit had expired. Further, the Beckers' reliance on *Sarchett v. Blue Shield of California*, 48 Cal.3d 1, 13–15, 233 Cal.Rptr. 76, 729 P.2d 267 (1987), is misplaced. In that case, the insurer failed to inform the insured of his right to arbitration after the insured repeatedly protested the insurer's denial of his claim. The insurer also improperly placed a condition on review of the claim. The court found that the insurer had misrepresented the insured's rights for the purpose of inducing the insured to give up his rights. Also, the insurer had reason to know that the insured's lack of knowledge could result in the forfeiture of his rights. Here, there was no misrepresentation about plaintiffs' right to sue. State Farm is not obliged to inform its insureds of a right they do not have (any right had expired before State Farm knew of the claim). Also, the Beckers were represented by counsel; thus, this is not a situation in which the insurer should know that the insureds' lack of knowledge could result in forfeiture of rights.

Consequently, the Beckers' suit is time-barred and State Farm is entitled to summary judgment.

### B. *Business Pursuit*

The first policy excludes coverage for "business property while away from the described premises." "Business" is defined as "a trade, profession or occupation, including farming, in the use of any premises or portion of residence premises for any such purposes." The second policy limits coverage of personal property to "$200.00 on property used or intended for use in a business." "Business" is defined as "a trade, profession or occupation, including farming."

*State Farm Fire & Casualty Company v. Drasin*, 152 Cal.App.3d 864, 869, 199 Cal.Rptr. 749 (1984), interpreted "trade" to mean "any business carried on for the purpose of profit or gain or livelihood." "Occupation" is "an extremely broad term sufficient to include any business, trade, profession, pursuit, vocation, or calling." *Id.* at 870, 199 Cal.Rptr. 749. The business pursuit exception turns on the motivation for the pursuit. A profit motive carries considerable weight, and the business engaged in need not be the sole occupation. Part-time business activities are included. *Id.* Further, the California Revenue and Tax Code, section 6013, defines business as "any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect." The theme is a regular activity with a motive for profit or gain. *Drasin*, 152 Cal.App.3d at 870, 199 Cal.Rptr. 749.

In *Drasin*, the court found that the insureds' limited partnership interest in mining leases was a business pursuit, even though one of the insureds was an attorney by profession.

■ The Beckers argue that their agreement to own movie theaters was not a business pursuit. They argue that it was a one-time deal, and thus not a regular business activity. Also, they were passive investors; TDC was to perform all services. These arguments are not convincing. At deposition, Mr. Becker said his initial conversation with Lupert concerned a "mutual business deal." Also, the Beckers were to be the owners of the theater. They were

not completely passive investors. Mr. Becker discussed particular brands of theater equipment and other details about the theater with Lupert. At the least, the Beckers caused TDC to be engaged in managing a theater with the object of profit for the Beckers. Although this may have been a one-time deal, it was intended to be an ongoing business activity. Owning a movie theater clearly is a business pursuit.

■ The Beckers also argue that State Farm has waived the right to raise the business pursuit defense. Although State Farm did raise this defense in the letter to plaintiffs denying their claim for $104,-000.00, it did not raise this defense in the settlement of plaintiffs' initial claim for $1000.00. The Beckers claim that State Farm's statement in a letter to the Beckers that State Farm did not fully investigate the claim for $1000.00 is additional evidence of waiver.

The Beckers misconstrue the waiver cases cited above. The cases require the insurer to fully investigate all defenses before denying a claim. State Farm paid the Becker's initial $1000.00 claim. There was no denial, and thus no investigation was necessary. State Farm clearly ·cited the business pursuit defense in its final denial of plaintiffs' $104,000.00 claim. Therefore, there was no waiver and the business pursuit clauses in the policies apply. State Farm is not liable for any loss on the first check and is liable for at most a $200.00 loss on the second check. Since State Farm has already paid plaintiffs $1000.00, it is entitled to summary judgment.

### C. *Other Policy Limitations*

Because the twelve-month time limit and the business pursuit exclusion entitle defendant to summary judgment, the Court need not reach the other limitations clauses raised by the parties.

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

(1) Defendant's motion for summary judgment is granted.

(2) Plaintiffs' motion for summary judgment and alternative motion for summary adjudication of issues are denied.